# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No: 09 B 42248 |
| | ) | Chapter 7 |
| RONALD F. MORGAN, JR., | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| NICHOLAS & ASSOCIATES, INC., | ) | |
| | ) | Adversary No. 10 A 00253 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD F. MORGAN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the complaint filed by Nicholas & Associates, Inc. (the "Creditor") to determine the dischargeability of a debt against Ronald F. Morgan, Jr. (the "Debtor") under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). For the reasons set forth herein, the Court finds that the Creditor has demonstrated all of the requisite elements of the statutory exceptions and that, therefore, the debt, which has not been liquidated, is nondischargeable under §§ 523(a)(2)(A) and (a)(6). Additionally, the Court finds that the Creditor's attorneys' fees and expenses incurred in connection with this adversary proceeding are likewise nondischargeable. Judgment is entered in favor of the Creditor.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

The Creditor is an Illinois corporation that provides general construction services and has been in business for thirty-four years. (Tr. 8:13 - 23; Answer ¶ 1.) Nicholas E. Papanicholas ("Papanicholas") is the president. (Tr. 8:9 - 20.) The Debtor was the owner, president, and operator of RFM Enterprises, Inc. doing business as Newgrom Construction Company ("Newgrom Construction"). (Answer ¶ 2.) Newgrom Construction also was engaged in the business of general construction. (*Id.*)

On March 18, 2008, the Creditor contracted with Kaneland Community Unit School District No. 302 ("Kaneland") for a construction project located at Harter Middle School (the "Project"). (Tr. 9:20 - 25; Pl.'s Proposed Findings of Fact & Conclusions of Law ¶ 7.) In connection with the Project, the Creditor and Newgrom Construction entered into a subcontract agreement (the "Subcontract") on April 7, 2008. (Creditor Ex. No. 2.) Under the terms of the Subcontract, Newgrom Construction agreed to provide various construction services for the Project, including metal stud framing, drywall, acoustical ceilings, and rough and finish carpentry. (*Id.* at ¶ 2; Tr. 11:19 - 22.) The Subcontract was a lump sum contract for $1,215,000. (Creditor Ex. No. 2, ¶ 3.) Newgrom Construction either self-performed or hired subcontractors to perform the work required of it under the Subcontract or provided

-3-

necessary materials through suppliers to the Project. (Answer ¶ 9.)   The Debtor was

Newgrom Construction's project manager for the Project. (Creditor Ex. No. 50 at p. 24.)

In order to receive payment for services, materials, and/or other work performed on

the Project by Newgrom Construction, subcontractors, or suppliers, Newgrom Construction,

by its president, the Debtor, was required to submit completed contractor's affidavits and

waivers of lien to the Creditor in accordance with the applicable Illinois mechanics lien laws.

(Tr. pp. 12-14.)  The Debtor understood that the Creditor required Newgrom Construction

to list all material suppliers on its waivers of lien.  (Creditor Ex. No. 1 at 32:22 - 33:3.)

The Debtor signed all of the contractor's affidavits under oath and as president of

Newgrom Construction. (Creditor Ex. Nos. 4, 7, 10, 13, 16, 19, 22, 25, 28, 31.) Specifically,

the contractor's affidavits provided as follows:

> That the following are the names and addresses of *all* parties
> who have furnished material or labor, or both, for said work
> and all parties having contracts or sub contracts for specific
> portions of said work or for material entering into the
> construction thereof and the amount due or to become due to
> each, and that the items mentioned include all labor and
> material required to complete said work according to plans
> and specifications[.] . . . That there are no other contracts for
> said work outstanding, and that there is nothing due or to
> become due to any person for material, labor or other work of
> any kind done or to be done upon or in connection with said
> work other than above stated.

(*Id.*) (emphasis supplied).  Additionally, the contractor's affidavits stated that "[a]ll other

materials taken from fully paid stock and delivered to job site." (*Id.*)  This language means

that if a supplier was not listed on the contractor's affidavit, then the material provided by

Newgrom Construction for the Project had previously been paid for by Newgrom

-4-

Construction. (Tr. p. 19.) These forms were reviewed by the Creditor and then forwarded to Kaneland for its review. (*Id.* at p. 12.)

From November 2008 through July 2009, Newgrom Construction, by the Debtor, began ordering materials and supplies from Westmont Interior Supply House ("Westmont") for use on the Project. (*Id.* at 26:7 - 29:18.) In June and July of 2009, Westmont delivered materials for use on the Project valued at approximately $225,000. (*Id.* at 29:14 - 18.)

Newgrom Construction received waivers of lien from Westmont in connection with some of the materials it supplied for the Project. (Creditor Ex. No. 44.) Neither the Debtor nor Newgrom Construction forwarded these waivers of lien to the Creditor. (Creditor Ex. No. 1 at 88:8 - 12.) From July through September of 2009, the Creditor made progress payments to Newgrom Construction in the sum of more than $440,000. (Creditor Ex. Nos. 32, 35, 38; Tr. 31:7 - 33:25.)

On November 6, 2009, the Debtor and Newgrom Construction separately filed Chapter 7 bankruptcy petitions. (*See* Bankr. Case No. 09-42248, Dkt. No. 1; Bankr. Case No. 09-42246, Dkt. No. 1.)

Subsequently, on February 5, 2010, Westmont filed a complaint in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Geneva, Illinois, against, among others, the Creditor, Newgrom Construction, and Kaneland. (*See* Creditor Ex. No. 43.) Westmont filed the lawsuit against the Creditor as a result of not being paid by Newgrom Construction. (*See id.* at ¶¶ 6 & 7.) In its complaint, Westmont alleged, under oath, as follows:

> [O]n or about June 30, 2009, [Newgrom Construction] contracted with Westmont to provide certain acoustical and building material for the Project. On or after July 15, 2009,

-5-

> the aforesaid acoustical and building material was delivered
> by Westmont to the Project and incorporated into the Project.
> The value of the material delivered by Westmont and
> incorporated into the Project which has not been paid totals
> $225,864.48.

(*Id.*)

On February 22, 2010, the Creditor filed this adversary proceeding. (*See* Adv. Case No. 10-00253, Dkt. No. 1.) About a month later, on May 27, 2010, the Creditor filed an amended complaint in which it alleges that the debt owed to it by the Debtor should be found nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). (*See id.*, Dkt. No. 9.) On April 22, 2011, the Court held an evidentiary hearing. Papanicholas was the only witness who testified.[1] After the hearing, the Court took the matter under advisement upon receipt of the parties' post-trial closing arguments and briefs.

## III. APPLICABLE STANDARDS

### A. Exceptions to the Discharge of a Debt

The discharge provided by the Bankruptcy Code is meant to effectuate the fresh start goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992);

---

[1] Prior to Papanicholas's testimony, the Court sustained the Creditor's objections to the defense exhibits and witnesses, explaining that the Debtor had failed to timely file the materials required by the Court's Final Pretrial Order of February 4, 2011. (*See* Tr. pp. 3-6; Adv. Case No. 10-00253, Dkt. No. 29.) The Court admitted all plaintiff exhibits, except Exhibits 48 and 49, without the need for foundation and without objection from the Debtor. (*See* Tr. p. 6.)

-6-

*Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957 (Bankr. N.D. Ill. 1995). The

United States Supreme Court has held that the burden of proof required to establish an

exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279,

291 (1991); *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*,

36 F.3d 697, 700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against

the creditor and liberally in favor of the debtor. *In re Morris*, 223 F.3d 548, 552 (7th Cir.

2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998). "[Section

523(a)] is narrowly construed so as not to undermine the Code's purpose of giving the honest

but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*,

266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

**B.**   **11 U.S.C. § 523(a)(2)(A)**

Section 523 of the Code enumerates specific, limited exceptions to the

dischargeability of debts. Among them, section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>
>                              . . .
>
> (2) for money, property, services, or an
> extension, renewal, or refinancing of credit, to
> the extent obtained by–
>     (A) false pretenses, a false
>     representation, or actual fraud,
>     other than a statement
>     respecting the debtor's or an
>     insider's financial condition[.]

-7-

11 U.S.C. § 523(a)(2)(A).  Section 523(a)(2)(A) lists three separate grounds for dischargeability:  false pretenses, false representation, and actual fraud. *Id.*; *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

### 1. False Pretenses or False Representation

In order to except a debt from discharge based on false pretenses or false representation, the creditor must establish the following elements:  (1) the debtor made a false representation or omission of fact; (2) that the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 538 (Bankr. N.D. Ill. 2010); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004).  To prevail on a § 523(a)(2)(A) complaint, all three elements must be established. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one element is outcome determinative. *Jairath*, 259 B.R. at 314.

False pretenses in the context of § 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression. *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996).  The Court has defined false pretenses as follows:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor....

-8-

> A false pretense is usually, but not always, the product of
> multiple events, acts or representations undertaken by a
> debtor which purposely create a contrived and misleading
> understanding of a transaction that, in turn, wrongfully
> induces the creditor to extend credit to the debtor. A "false
> pretense" is established or fostered willfully, knowingly and
> by design; it is not the result of inadvertence.

*Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (internal

quotation omitted); *see also John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 872

(Bankr. N.D. Ill. 2004) (*quoting Paneras*).

False pretenses do not require overt misrepresentations. *Sarama*, 192 B.R. at 928.

"Instead, omissions or a failure to disclose on the part of the debtor can constitute

misrepresentations where the circumstances are such that omissions or failure to disclose

create a false impression which is known by the debtor." *Id.*; *see also Shelby Shore Drugs,*

*Inc. v. Sielschott (In re Sielschott)*, 332 B.R. 570, 573 (Bankr. C.D. Ill. 2005) (finding that

"[s]ilence or concealment may constitute false pretenses"); *Fosco v. Fosco (In re Fosco)*, 289

B.R. 78, 86 (Bankr. N.D. Ill. 2002) (same).

In contrast, a false representation is an express misrepresentation that can be

demonstrated either by a spoken or written statement or though conduct. *New Austin*

*Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D.

Ill. 2002); *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002). "A

debtor's silence regarding a material fact [also] can constitute a false representation under

§ 523(a)(2)(A)." *Trs. of the Operating Eng'rs Local No. 965 Health Benefit Plan v. Westfall*

*(In re Westfall)*, 379 B.R. 798, 803 (Bankr. C.D. Ill. 2007). Failure to disclose pertinent

information may be a false representation where the circumstances imply a specific set of

-9-

facts and disclosure is necessary to correct what would otherwise be a false impression.

*Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992). "A

contractor's false affidavit certifying that subcontractors and materialmen have been paid and

that there are no mechanic's or materialmen's liens against the property when in fact such

subcontractors have not been paid may . . . result in a nondischargeable debt under §

523(a)(2)(A)." *Cripe v. Mathis (In re Mathis)*, 360 B.R. 662, 667 (Bankr. C.D. Ill. 2006).

### 2. Actual Fraud

The Seventh Circuit Court of Appeals has defined the term "fraud" for purposes of

§ 523(a)(2)(A) as follows:

> Fraud is a generic term, which embraces all the multifarious
> means which human ingenuity can devise and which are
> resorted to by one individual to gain an advantage over
> another by false suggestions or by the suppression of truth.
> No definite and invariable rule can be laid down as a general
> proposition defining fraud, and it includes all surprise, trick,
> cunning, dissembling, and any unfair way by which another
> is cheated.

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (internal quotation omitted).

"Actual fraud" is not limited to misrepresentation but may encompass "any deceit, artifice,

trick, or design involving direct and active operation of the mind, used to circumvent and

cheat another[.]" *Id.* (internal quotation omitted).   Hence, a different analysis from

misrepresentation must be utilized when a creditor alleges actual fraud. *Id.* at 893-94. The

*McClellan* court opined that because common law fraud does not always take the form of a

misrepresentation, a creditor need not allege misrepresentation and reliance thereon to

establish a cause of action for actual fraud under § 523(a)(2)(A). *Id.* at 894.   Rather, the

-10-

creditor must prove that: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt at issue. *Id.*; *Liebl*, 434 B.R. at 538. The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. *McClellan*, 217 F.3d at 894. The existence of fraud may be inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor which indicates that he intended to deceive or cheat the creditor. *Mathis*, 360 B.R. at 666; *Sielschott*, 332 B.R. at 572.

### 3. Intent

Any cause of action under § 523(a)(2)(A)–false pretenses, false representation, or actual fraud– requires proof that the debtor acted with intent to deceive. *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). Proof of intent is measured by the debtor's subjective intention at the time the representation was made. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004); *Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708, 717 (Bankr. E.D. Wis. 2003). It is well established, however, that courts can consider subsequent conduct if that conduct provides an indication of the debtor's state of mind at the time of the actionable representation. *6050 Grant, LLC v. Hanson (In re Hanson)*, 437 B.R. 322, 327-28 (Bankr. N.D. Ill. 2010) (collecting cases), *aff'd*, No. 10 C 7634, slip op. (N.D. Ill. July 18, 2011).

Deciding whether a debtor had the requisite intent under § 523(a)(2)(A) is, therefore, a factual, subjective inquiry determined by examining all of the relevant circumstances, including those that took place after the debt was incurred. *Id.* at 328; *see also Sears, Roebuck & Co. v. Green (In re Green)*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003). Because a debtor will rarely, if ever, admit to acting with an intent to defraud, the scienter element

-11-

may be inferred from the surrounding circumstances. *Hickory Point Bank & Trust, FSB v. Kucera (In re Kucera)*, 373 B.R. 878, 884 (Bankr. C.D. Ill. 2007); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315. After all of the evidence has been produced, the Court must then determine whether the circumstances, viewed in the aggregate, present "a picture of deceptive conduct" by the debtor, indicating an intent to defraud the creditor. *See Mathis*, 360 B.R. at 666; *Sielschott*, 332 B.R. at 572.

### 4. Justifiable Reliance

The final element under § 523(a)(2)(A) requires a finding of causation. Reliance on a false pretense, a false representation, or actual fraud under § 523(a)(2)(A) must be "justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). Justifiable reliance requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 71 (internal quotation omitted). An intermediate level of reliance, justifiable reliance falls somewhere between the more stringent "reasonable reliance" guidepost and the more lenient "reliance in fact." *Id.* at 73-75.

The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by using an objective standard. *Id.* at 71;

-12-

*Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002).

"[A] person is justified in relying on a representation of fact 'although he might have

ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank*

*v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (*quoting Field*, 516 U.S. at 70).

"However, a 'plaintiff may not bury his head in the sand and willfully ignore obvious

falsehoods.'" *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 892 (Bankr. C.D. Ill.

2007) (*quoting Zirkel v. Tomlinson (In re Tomlinson)*, Nos. 96 B 27172, 96 A 1539, 1999

WL 294879, at *12 (Bankr. N.D. Ill. May 10, 1999)).

To satisfy the reliance element of § 523(a)(2)(A), the creditor must establish that the

debtor made a material misrepresentation that was the cause-in-fact of the debt that the

creditor seeks to have excepted from discharge. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51

F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction of a material

misrepresentation with causation in fact."). *See also Westfall*, 379 B.R. at 805 (*citing*

*Mayer*).

### C.      11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Code provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>
> .   .   .
>
> (6) for willful and malicious injury by the
> debtor to another entity or to the property of
> another entity[.]

11 U.S.C. § 523(a)(6).

-13-

For a finding of nondischargeability of a debt under § 523(a)(6), a creditor must prove

three elements by a preponderance of the evidence:  (1) that the debtor intended to and

caused an injury to the creditor's person or property interest; (2) that the debtor's actions

were willful; and (3) that the debtor's actions were malicious. *Birriel v. Odeh (In re Odeh)*,

431 B.R. 807, 817 (Bankr. N.D. Ill. 2010); *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re

Fairgrieves)*, 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010); *Mulder*, 307 B.R. at 641.

"Injury" has been defined as "the violation of another's legal right or the infliction

of an actionable wrong." *Fairgrieves*, 426 B.R. at 757.  Injuries contemplated by § 523(a)(6)

are not confined to physical damage; an injury to intangible personal or property rights will

suffice. *Id.*

"The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that

nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or

intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)

(emphasis in original).  Under *Geiger* and its stringent standards, to satisfy the requirements

of § 523(a)(6), a creditor must plead and prove that the debtor actually intended to harm him

and not merely that the debtor acted intentionally and the creditor was thus harmed. *See id.*

at 61-62.  In other words, the debtor must have intended the tortious consequences of his act.

*See id.*; *see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004).

Injuries either negligently or recklessly inflicted do not fall within the ambit of § 523(a)(6).

*Geiger,* 523 U.S. at 64.

The United States Supreme Court has not defined the scope of the term "intent" used

to describe willful conduct. *Fairgrieves*, 426 B.R. at 757; *Zamora v. Jacobs (In re Jacobs)*,

-14-

403 B.R. 565, 581 (Bankr. N.D. Ill. 2009).  Recent decisions, however, have generally found that either a showing of subjective intent to injure the creditor or a showing of subjective knowledge by the debtor that injury is substantially certain to result from his acts can establish the intent required by *Geiger*. *Fairgrieves*, 426 B.R. at 757 (collecting cases).

As to the malice element, conduct is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . . ." *Thirtyacre*, 36 F.3d at 700 (internal quotation omitted).  The test for malice under § 523(a)(6) is:  (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause or excuse. *Paul*, 266 B.R. at 696.  A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious.  *Thirtyacre*, 36 F.3d at 700. Rather, the key to maliciousness is "consciousness of wrongdoing." *Centier Bank v. Young (In re Young)*, 428 B.R. 804, 818 (Bankr. N.D. Ind. 2010).

"Whether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact." *Thirtyacre*, 36 F.3d at 700.  Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury. *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002).

## IV.  DISCUSSION

### A.      Count I of the Complaint

In Count I of the complaint, the Creditor alleges that the debt at issue should be found nondischargeable under § 523(a)(2)(A).  Having considered all of the evidence adduced at

-15-

trial, the Court finds that the Creditor has established each element of the statutory exception

and, thus, holds the debt nondischargeable under § 523(a)(2)(A).

First, the Court finds that the Creditor has demonstrated that the Debtor made false

representations of material fact.[2]  Specifically, the Debtor failed to list Westmont as a

supplier on any of the contractor's affidavits that Newgrom Construction submitted to the

Creditor. (Tr. 29:25 - 30:4.) Rather, the Debtor repeatedly executed those affidavits falsely

stating that no additional sums were due, or would become due, to any person or entity for

labor or materials in connection with the Project.  Further, the Debtor stated that the

materials supplied by Westmont came from Newgrom Construction's fully paid stock.  These

statements were false because the materials were actually provided by Westmont.  In fact,

Westmont provided hundreds of thousands of dollars worth of supplies for the Project and

was owed money by Newgrom Construction for those supplies.  Additionally, the Creditor

was not aware that Westmont was providing supplies to Newgrom Construction for use on

the Project (Creditor Ex. No. 1 at 61:21 - 62:3), and the Debtor did not inform the Creditor

that Westmont contracted with Newgrom Construction to provide any such supplies or

perform any work in connection with the Project.  According to the Debtor, the Creditor

could not have known that Westmont was providing supplies to Newgrom Construction for

---

[2]  The Court finds that the Debtor, as the owner, president, and operator of RFM
Enterprises, Inc. doing business as Newgrom Construction, acted as Newgrom
Construction's agent.  An allegation of fraud against an agent of an entity can be the basis
of a dischargeability action against the agent. *See Hemelt v. Pontier (In re Pontier)*, 165 B.R.
797, 799 (Bankr. D. Md. 1994).  After all, "[a]gents are liable for their own torts." *Pretzel
& Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994); *see also
Miller v. Simon*, 241 N.E.2d 697, 700, 799 (Ill. App. Ct. 1968) (finding that agents are
personally liable for torts they commit even though performed in the name of an artificial
entity).

-16-

the Project unless the Debtor had informed the Creditor. (*Id.* at 65:10 - 12.) The Debtor's
failure to list Westmont on the contractor's affidavits constitutes misrepresentation by
omission. *See Hardin Paving Co. v. Jackowiak (In re Jackowiak)*, Nos. 09-B-70190, 09-A-
96013, 2009 WL 3930217, at *2 (Bankr. N.D. Ill. Nov. 18, 2009).

Next, the Court finds that the false representations of fact were made by the Debtor
with an intent to deceive. The contractor's affidavits required Newgrom Construction to list
any person or entity that provided labor or supplies for the Project. The Debtor knew that
Westmont had provided supplies for the Project and was owed money for those supplies.
Nevertheless, the Debtor failed to include Westmont on the affidavits. The Debtor also knew
that, as a prerequisite to receiving progress payments, Newgrom Construction was required
to disclose all suppliers and attest that all bills had been paid. (Creditor Ex. No. 50 at 21:15 -
22:18.) Throughout the course of the Project, between November 2008 and September 2009,
the Debtor never informed the Creditor that Newgrom Construction was receiving materials
and supplies from Westmont. The failure to disclose this information, through contractor's
affidavits or otherwise, allowed the Debtor and Newgrom Construction to receive payments
from the Creditor for materials and supplies provided by Westmont for which Westmont was
never paid. As a result, the Court infers an intent to deceive on the part of the Debtor.

The Court also finds that the Creditor justifiably relied on the Debtor's false
representations. In addition to personally knowing the Debtor since 1994, Papanicholas had
had a fifteen-year business relationship with him and had used Newgrom Construction to
perform subcontracting services on more than thirty jobs. (Tr. 37:5 - 38:9.) Not surprisingly,
then, Papanicholas trusted the Debtor and expected him to tell the truth. (Creditor Ex. No.

-17-

1 at 147:1 - 9.) In particular, as the Creditor's president, Papanicholas trusted the Debtor to

submit truthful and accurate contractor's affidavits and expected the subcontractor, Newgrom

Construction, to list all of the suppliers that provided materials for use on the Project. (*Id.*;

Tr. 17:2 - 6 & 20 - 24, 20:8 - 13.) Papanicholas had no reason to believe that any stock from

Westmont used for the Project had not been fully paid for, and there was no independent way

for him to determine the accuracy of the affidavits. (Creditor Ex. No. 50 at pp. 61-62, 65.)

For the period July, August, and September of 2009, the Creditor made progress

payments to Newgrom Construction in the sum of more than $440,000. (Tr. 31:7 - 33:25.)

The Creditor made these payments in reliance on the information contained in the

contractor's affidavits signed by the Debtor. The Court finds that this reliance was

justifiable. If the Debtor had listed Westmont on the affidavits for July, August, and

September, Papanicholas testified that he would have ensured that Westmont was paid by

Newgrom Construction, issued a joint check to Newgrom Construction and Westmont, or

paid Westmont directly for the materials and supplies provided. (*Id.* at 34:1 - 9.) Based on

the Debtor's false contractor's affidavits, the Creditor paid Newgrom Construction, but

Newgrom Construction did not pay Westmont for those supplies. (*Id.* at 34:17 - 35:5.) As

a direct result, Westmont filed a lawsuit against, inter alia, the Creditor. (*Id.* at 35:6 - 16.)

This "put a cloud" over the Creditor's business, and Kaneland withheld monies owed to the

Creditor. (*Id.* at 35:17 - 36:4.)

Finally, the Court finds that the Debtor's false contractor's affidavits caused the

Creditor to suffer damages. Specifically, because the Debtor, through Newgrom

Construction, did not pay Westmont for materials it provided for the Project, Westmont filed

-18-

a complaint against the Creditor, among others, claiming damages of $225,864.48. (Creditor Ex. No. 43.)

In sum, the Court concludes that the Creditor has demonstrated all of the requisite elements of § 523(a)(2)(A). Accordingly, the Court holds that the debt at issue is nondischargeable under that statutory exception. Although the Court may determine both the dischargeability of the debt and the damages involved in this matter, *see N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991), the Creditor has failed to liquidate or otherwise set forth the precise and total amount of the debt owed to it. Thus, the issue of damages is better taken up in the state court where the Creditor can proceed to establish and prove the total amount of its claimed damages.

**B.    Count II of the Complaint**

Next, the Creditor alleges that the debt owed to it by the Debtor should be found nondischargeable under § 523(a)(6). The Court finds that the Creditor has satisfied the necessary elements under this statutory exception as well.

First, the evidence establishes that the Debtor acted willfully and with intent to injure the Creditor. As an experienced construction contractor, the Debtor knew that suppliers had to be disclosed in order to receive payment. (Creditor Ex. No. 50 at pp. 21-22, 33.) Yet, he continually failed to disclose Westmont as a supplier on the contractor's affidavits. (*See* Creditor Ex. Nos. 4, 7, 10, 13, 16, 19, 22, 25, 28, 31.) The Court has already found that the Debtor's failure to disclose this information was intentional. As to the injury requirement, the false statements and omissions in the affidavits signed by the Debtor caused actual injury to the Creditor's property interest in the proceeds owed it on the Project because the Creditor

paid Newgrom Construction for materials supplied by Westmont, but Newgrom Construction

failed to pay Westmont. As a result, Westmont filed suit against the Creditor, and Kaneland

withheld payment under its contract with the Creditor. Finally, the Court finds that the

Debtor acted maliciously: his actions were wrongful; they were done intentionally; they

caused injury to the Creditor; and they were done without any just cause or excuse. In fact,

the Debtor offers no cause or excuse–just or otherwise–for intentionally omitting Westmont

from the contractor's affidavits or failing to disclose that Newgrom Construction owed

substantial unpaid amounts to Westmont under the Subcontract. Therefore, the Court finds

that the debt owed by the Debtor to the Creditor is nondischargeable under § 523(a)(6).

### C.   Attorneys' Fees

The Creditor also seeks attorneys' fees in connection with the determination of the

nondischargeability of the debt in this adversary proceeding. The United States Supreme

Court has held that § 523(a)(2) is not limited to the actual amount transferred to a debtor in

reliance on fraud or misrepresentation. Rather, "'any debt . . . for money, property, services,

or . . . credit, to the extent obtained by' fraud encompasses any liability arising from money,

property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and

other relief that may exceed the value obtained by the debtor." *Cohen v. de la Cruz*, 523 U.S.

213, 223 (1998). In addition, the Subcontract between the Creditor and Newgrom

Construction specifically provided that Newgrom Construction would indemnify the Creditor

and Kaneland against any and all losses and liabilities in connection with lien claims,

including legal fees sustained by either or both of them. (Creditor Ex. No. 2, ¶¶ 5 & 7.)

Thus, the Court finds that the Creditor's unliquidated attorneys' fees and expenses incurred

-20-

in connection with this matter are likewise nondischargeable.  The Creditor may proceed in state court to recover those fees and expenses incurred herein.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that the Creditor has demonstrated all of the elements under §§ 523(a)(2)(A) and (a)(6), and that, thus, the debt is nondischargeable under those statutory exceptions.  In addition, the Court finds that  the Creditor's attorneys' fees and expenses incurred in connection with this adversary proceeding are also nondischargeable.  Judgment is entered in favor of the Creditor.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall be entered pursuant to Federal Rules of Bankruptcy Procedure 5003 and 9021.

ENTERED:

DATE: _8/18/11_

_____
John H. Squires
**United States Bankruptcy Judge**

cc:    See attached Service List

## SERVICE LIST

### Nicholas & Associates, Inc. v. Ronald F. Morgan, Jr.
**Adversary Case No. 10 A 00253**

Charles S. Stahl, Jr., Esq.
Swanson, Martin & Bell, LLP
2525 Cabot Drive, Suite 204
Lisle, IL 60532

Charles B. Lewis, Esq.
Duane Morris LLP
190 S. LaSalle Street, Suite 3700
Chicago, IL 60603

David E. Grochocinski, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

Patrick S. Laying, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604